UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL T.,
                              Plaintiff,

            v.

MARTIN O'MALLEY,[1] Commissioner of
  Social Security,
                              Defendant.
_____

                                        **DECISION**
                                           **and**
                                         **ORDER**

                                    **21-CV-6429F**
                                     **(consent)**

APPEARANCES:         HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                     Attorneys for Plaintiff
                     KENNETH R HILLER,
                     IDA M. COMERFORD, and
                     JUSTIN M. GOLDSTEIN, of Counsel
                     6001 North Bailey Avenue
                     Suite 1A
                     Amherst, New York  14226

                     TRINI E. ROSS
                     UNITED STATES ATTORNEY
                     Attorney for Defendant
                     Federal Centre
                     138 Delaware Avenue
                     Buffalo, New York  14202
                              and
                     KATHRYN L. SMITH
                     Assistant United States Attorney, of Counsel
                     100 State Street
                     Rochester, New York  14614
                              and
                     ANDREA LAURA LECHLEITNER
                     Special Assistant United States Attorney, of Counsel
                     Social Security Administration
                     Office of General Counsel
                     6401 Security Boulevard
                     Baltimore, Maryland  21235
                              and

---

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

JOSHUA L. KERSHNER
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of General Counsel
26 Federal Plaza
Room 3904
New York, New York  10278

## JURISDICTION

On April 11, 2024, the parties to this action consented pursuant to 28 U.S.C. §
636(c) to proceed before the undersigned in accordance with this court's June 29, 2018
Standing Order.  The matter is presently before the court on motions for judgment on
the pleadings filed by Plaintiff on March 18, 2022 (Dkt. 9), and by Defendant on April 11,
2022 (Dkt. 10).

## BACKGROUND

Plaintiff Michael T. ("Plaintiff"), brings this action under Title II of the Social
Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner
of Social Security's final decision denying Plaintiff's application ("application") filed with
the Social Security Administration ("SSA") on April 14, 2019, for Social Security
Disability Insurance under Title II of the Act ("SSDI" or "disability benefits").  Plaintiff
alleges he became disabled on December 5, 2014, based on congestive heart failure.
AR[2] at 78, 89, 191-97, 205, 208.  Plaintiff's application initially was denied on October 3,
2019.  AR at 67-77, and upon reconsideration on May 12, 2020.  AR at 101-12.

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by
Defendant on November 1, 2021 (Dkt. 7).

On June 15, 2020, Plaintiff timely filed a request for an administrative hearing, AR at 118-19, and on November 18, 2020, the hearing was held via video conference before Administrative Law Judge ("ALJ") David Romeo ("the ALJ"), located in Syracuse, New York ("administrative hearing").  AR at 39-66.  Appearing at the hearing in Rochester, New York was Plaintiff, represented by non-attorney Peter Siracuse.  Also appearing and testifying at the administrative hearing was an impartial vocational expert April Rosenblatt ("the VE").

On December 7, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 7-26 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council ("administrative appeal").  AR at 187-90.  On May 7, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision that Plaintiff was not disabled, AR at 1-6 ("Appeals Council's Decision"), thus rendering the ALJ's Decision the Commissioner's final decision.  On June 4, 2021, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On March 18, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching Plaintiff's Memorandum of Law in Support of a Motion for Judgment on the Administrative Record (Dkt. 9-1) ("Plaintiff's Memorandum").  On April 11, 2022, Defendant moved for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief (Dkt. 10-1) ("Defendant's Memorandum").  On May 23, 2022, Plaintiff filed Reply Arguments (Dkt. 11).  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## FACTS[3]

Plaintiff Michael T. ("Plaintiff"), born on December 6, 1974, was one day shy of 40 years old as of his alleged disability onset date ("DOD") of December 5, 2014, and had just turned 46 as of December 7, 2020, the date of the ALJ's Decision.  AR at 10, 22, 191, 205.  Plaintiff was in special education classes in school, which he attended through the 10th grade, and has not earned a high school diploma nor completed any type of specialized job training, trade, or vocational school.  AR at 47, 208.  Plaintiff has a driver's license and is able to drive.  AR at 46-47, 219.  Plaintiff's past relevant work ("PRW"), includes working from April 2001 until December 2018, initially as a roofer and later as the president of a roofing company which Plaintiff owned.  AR at 48-51, 54-55, 209.

Plaintiff maintains he was born with an enlarged heart, and after a bout with pneumonia in 2014, Plaintiff started developing heart problems which left him with no energy and shortness of breath.  AR at 45, 294-95, 298, 731.  On December 5, 2014, Plaintiff was diagnosed with mild epicardial coronary disease (athlerosclerosis (plaque buildup) of the coronary arteries), and nonischemic cardiomyopathy (decreased heart function not caused by heart attack or blockages of arteries in the heart).  AR at 294, 445.  Since December 5, 2014, Plaintiff has obtained treatment for his heart condition from Kevin McGrody, M.D. ("Dr. McGrody"), a cardiologist at University of Rochester

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

Medical Center ("URMC").  On February 23, 2015, Plaintiff underwent surgical implantation of a defibrillator/pacemaker by Mark E. Hamer, M.D. ("Dr. Hamer"), at Rochester General Hospital ("RGH") in Rochester, New York.  AR at 445-48.

In connection with his disability benefits application, on September 25, 2019, Plaintiff underwent on a consultative basis an internal medicine examination by Susan Dantoni, M.D. ("Dr. Dantoni") AR at 731-34, and a psychiatric evaluation by Adam Brownfield, Ph.D. ("Dr. Brownfield").  AR at 737-40.  Dr. Dantoni reported Plaintiff's chief complaint was congestive heart failure ("CHF"), constant fatigue, shortness of breath, occasional chest pain, and loss of hearing in his left ear.  AR at 731.  Dr. Dantoni diagnosed Plaintiff with CHF, implanted defibrillator/pacemaker, high blood pressure, and decreased hearing in the left ear, for which Plaintiff's prognosis was fair.  AR at 733.  Dr. Dantoni also opined that Plaintiff was markedly impaired for activities involving any type of exertion because of his CHF, reporting Plaintiff has chronic fatigue and "become short of breath very, very easily."  AR at 734.  Dr. Dantoni further assessed Plaintiff with mild limitations for hearing in his left ear, moderate to marked limitations for climbing stairs, lifting and carrying, and that Plaintiff would not be able to participate in any activity requiring any exertion because of his CHF.  AR at 734.   Dr. Brownfield diagnosed Plaintiff with unspecified cannabis-related disorder, and unspecified depressive disorder, AR at 739, for which there was no evidence these impairments would cause any limitations other than a mild limitation in regulating emotions, controlling behavior, and maintaining well-being.  AR at 739.

Plaintiff's medical records in Plaintiff's administrative file were also reviewed on October 2, 2019, by State agency consultant psychologist J. Weitzen, Ph.D. ("Dr.

Weitzen"), who assessed Plaintiff with non-severe psychiatric impairments of depressive, bipolar and related disorders, and personality and impulse-control disorders.  AR at 71-73, 742-43.  Dr. Weitzen's findings were confirmed on February 10, 2020 by non-examining State agency consultant psychologist M. Juriga ("Dr. Juriga"). AR at 82-83, 748-49.  On October 3, 2019, Plaintiff's medical records were reviewed by non-examining State agency physician A. Saeed, M.D. ("Dr. Saeed"), who assessed Plaintiff with CHF which limited Plaintiff to sedentary work with some additional restrictions.  AR at 73-77, 744-45.  Dr. Saeed's findings were confirmed on February 4, 2020 by State agency consultant physician R. Abueg, M.D. ("Dr. Abueg").  AR at 84-88, 746-47.

On November 2, 2020, Dr. McGrody completed a "Medical Source Opinion Cardiac" form, reporting he had treated Plaintiff since December 5, 2014, for non-ischemic cardiomyopathy, ventricular tachycardia, and CHF.  AR at 911-12.  Dr. McGrody identified Plaintiff's symptoms as including chest pain, shortness of breath, palpitations, fatigue, dizziness, and weakness, indicating such symptoms were frequently severe enough to interfere with Plaintiff's attention and concentration.  *Id*. According to Dr. McGrody, Plaintiff is unable to walk even one city block without needing to rest, can stand at one time for no more than 15 minutes, can never lift and carry even up to 10 lbs., and would likely be absent from work as a result of his impairments four or more days per month.  *Id*.

**DISCUSSION**

1.      **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when [ ]he is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 1 2 months." 42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In

reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted). "Substantial evidence is more

than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id*. It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has

instructed . . . that the factual findings of the Secretary,[4] if supported by substantial

_____

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI under Title II of the Act and Social Security Insurance ("SSI") benefits under Title XVI of the Act.[5]  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or

---

[5] Plaintiff seeks disability benefits under only SSDI.

"the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's residual function capacity ("RFC") which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any PRW.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

Further, it is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC.  20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2).  In formulating an RFC, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Schillo v. Kijakazi*, 21 F.4th 64, 78 (2d Cir. 2022) (quoting *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) (brackets in *Schillo*)).

### 3.     Analysis of the ALJ's Decision

In the instant case, the ALJ found that Plaintiff meets the insured status requirements for SSDI though December 31, 2023, AR at 12, but despite alleging his DOD as December 5, 2014, Plaintiff engaged in substantial gainful activity ("SGA") during the years 2015-2017 and in the third quarter of 2018, AR at 12-13, that Plaintiff's earnings records indicate Plaintiff's income from his roofing business increased after his asserted DOD, *id*., but that there nevertheless has been a continuous 12-month period during which Plaintiff did not engage in SGA and the ALJ's findings were thus limited to those periods in which Plaintiff did not engage in SGA.  *Id*.

The ALJ found Plaintiff suffers from the severe impairments of CHF, chronic obstructive pulmonary disease ("COPD"), tobacco dependence, cannabis dependence, and obesity, *id*. at 13, but that such impairments, neither individually nor in combination, meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 14-16.  Despite his impairments, the ALJ found Plaintiff retains the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Plaintiff "can have no concentrated exposure to respiratory irritants, extremes of hot and cold or humidity," Plaintiff "can occasionally balance, stoop, kneel,

crouch, crawl and climb ramps and stairs but cannot climb ropes, ladders or scaffolds," and Plaintiff "can tolerate a low level of work pressure defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, or very short deadlines."  *Id*. at 16-20.  Plaintiff is unable to perform PRW, *id*. at 20, but based on Plaintiff's age category on the alleged DOD of a younger individual age 18-44, and subsequently changing age category to a younger individual age 45-49, and given Plaintiff's limited education and RFC, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a document preparer, telephone information clerk, and charge account clerk.  *Id*. at 20-21.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act at any time since December 5, 2014, through the date of the ALJ's decision.  *Id*. at 21-22.

    In support of his motion, Plaintiff argues that in determining Plaintiff's RFC, the ALJ failed to properly weigh the medical opinions of record, particularly with regard to the revised regulations applicable to claims filed after March 27, 2017, Plaintiff's Memorandum at 8-10, especially with regard to the opinions of Dr. McGrody, *id*. at 10-20, and Dr. Dantoni, *id*. at 20-23, both of whom opined Plaintiff was unable to work, and improperly elevated the opinions of State agency consultants Dr. Saeed and Dr. Abueg, who found Plaintiff was not disabled despite never physically examining Plaintiff, *id*. at 23-26, and failed to analyze how Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms are not consistent with the medical and other evidence in the record.[6]  *Id*. at 26-29.   Defendant argues the ALJ's physical

---

[6] Plaintiff does not challenge the ALJ's determination that Plaintiff's mental impairments are not disabling.

11

RFC finding that Plaintiff could perform a limited range of sedentary work was supported by substantial evidence in the record because the ALJ, properly considered the relevant factors, and properly chose between the medical opinions of record.  Defendant's Memorandum at 7-19.  In reply, Plaintiff argues the ALJ failed to follow the regulations when affording Dr. McGrody's opinion less than persuasive weight, which Defendant attempts to justify by providing an "after-the-fact explanation" for the ALJ's error. Plaintiff's Reply at 1-5.  Plaintiff further argues the ALJ erred by failing to follow the relevant regulations, especially the required factors, in assessing the various medical opinions of record.  *Id*. at 5-8.

Insofar as Plaintiff challenges the weight the ALJ gave to the various medical opinions in formulating Plaintiff's RFC, for claims filed on or after March 27, 2017, the relevant regulations provide that

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[7] including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate....

20 C.F.R. § 404.1520c(a).

In particular, when more than one medical opinion are provided by medical sources, the Commissioner will consider the medical opinions together according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with

---

[7] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review ... in your current claim based on their review of the evidence in your case ...." 20 C.F.R. § 404.1513(a)(5). In the instant case, no prior administrative medical finding is at issue.

the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).  When evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. § 404.1520c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. § 404.1520c(b)(2), but is not required to articulate consideration of the remaining factors.[8]  *Id.*  In the instant case, there is no merit to Plaintiff's argument that the ALJ erred in failing to consider the supportability and consistency of Dr. McGrody's or Dr. Dantoni's medical opinions.

As regards Dr. McGrody's opinion, rendered November 2, 2020, that Plaintiff is incapable of even sedentary work, the ALJ observed that Dr. McGrody has had a long-term treating relationship with Plaintiff as his treating cardiologist.  AR at 19.  The ALJ nevertheless found that Dr. McGrody's opinion that Plaintiff is incapable of even sedentary work is not persuasive because it is inconsistent with Dr. McGrody's own treatment records and the Plaintiff's asserted activity level.  *Id*.  Contrary to Plaintiff's argument that the ALJ failed to specify what evidence supports the ALJ's determination that Dr. McGrody's opinion is not supported by and inconsistent with Dr. McGrody's own treatment notes, Plaintiff's Memorandum at 11-15, and that Defendant merely supplies an "after-the-fact explanation" for the ALJ's rejection of Dr. McGrody's opinion, Plaintiff's

---

[8] In the interest of completeness, the court notes that where the ALJ fails to articulate the supportability and consistency factors with regard to opinions found persuasive, such error is harmless where the record establishes application of the correct legal standard would not have changed the outcome of the disability determination. *See Scott A. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at * 5-6 (N.D.N.Y. May 3, 2022) (applying harmless error standard where the ALJ failed to articulate the supportability and consistency factors in assessing the persuasiveness of a physician's opinion where application of the correct legal standard, including the supportability and consistency factors, would not have resulted in a different conclusion).

Reply at 1-5, a plain reading of the ALJ's Decision shows otherwise including that the ALJ stated his determination that Dr. McGrody's opinion was inconsistent with his own treatment records and Plaintiff's activity level "are as stated above," AR at 19, thereby referencing the preceding portions of the ALJ's Decision.

Specifically, the court's review of Dr. McGrody's treatment notes referenced by the ALJ show that on December 5, 2014, Plaintiff established treatment with Dr. McGrody, then with Rochester General Hospital ("RGH"), when Plaintiff complained of shortness of breath which worsened with exertion, feeling run down, fatigue, and dizziness with walking.  AR at 294-95.  Dr. McGrody reported that an echocardiogram taken that day showed "severe dilated cardiomyopathy with an EF of 5-10% range,"[9] *id*. at 295, Plaintiff had swollen legs, *id*., and sinus tachycardia (rapid heartbeat attributed to stress, intense exercise, or dehydration).  *Id*. at 297.  Dr. McGrody admitted Plaintiff to the hospital for further evaluation with intravenous diuretics to lower Plaintiff's fluids and coronary angiogram to rule out underlying coronary artery disease, *id*., but cardiac catherization in December 2014 showed no significant coronary artery disease.  AR at 316.  Dr. McGrody's subsequent treatments notes, many of which the ALJ references, all mention Plaintiff's symptoms as largely improving.

In particular, the ALJ references numerous of Dr. McGrody's treatment notes that indicate that after undergoing surgical implantation of the pacemaker in February 2015, Plaintiff was fatigued, but improving.  *See*, *e.g.*, AR at 17 (referencing AR at 321 (describing Plaintiff on June 18, 2015 as "continu[ing] to do well and does feel like he is

---

[9] "EF" refers to "[e]jection fraction [which] measures your heart's ability to pump oxygen-rich blood out of your body.  In a healthy heart, the fraction is a higher number.  A low number means that your heart has difficulty keeping up with your body's needs."  Cleveland Clinic: Ejection Fraction, *available at https:// my.clevelandclinic.org/health/*articles/16950-ejection-fraction (last visited Sept. 3, 2024).

getting stronger overall.").  The ALJ specifically remarked that following the surgical implantation of a pacemaker in February 2015, Dr. McGrody repeatedly reported improvement in Plaintiff's cardiac impairment including, for example, echocardiogram testing showing Plaintiff's EF in the 5-10% range on December 5, 2014, had improved to and was stabilized at 40% as of August 2, 2017, AR at 18 (citing AR at 856), and September 17, 2018.  *Id*. (citing AR at 759).  The ALJ also commented that Dr. McGrody repeatedly found Plaintiff did not present with chest pain, shortness of breath, or palpitations, and his fluid levels were better.  AR at 18 (citing AR at 832 (July 27, 2016), 759-61 (September 17, 2018), 763-64 (September 23, 2019), and 896 (April 14, 2020).  Significantly, the ALJ remarked, AR at 17, that on October 14, 2015, Dr. McGrody examined Plaintiff and reported that Plaintiff "has been doing well overall . . .," but continues to smoke and does not engage in much aerobic activity, yet "[h]e still works as a roofer so he [is] still doing a lot of heavy lifting which he can tolerate fairly well," AR at 792, and encouraged plaintiff do "get more aerobic activity to build up his stamina."  *Id*. at 795.  This is consistent with the ALJ's determination that Plaintiff reported earnings above the SGA level for the years 2015-2017, as well as the third quarter of 2018.  AR at 12-13.  Upon examining Plaintiff on February 24, 2016, Dr. McGrody reported Plaintiff "has been feeling better overall.  His fluid status is much improved.  He has had no chest pain, shortness of breath or palpitations."  AR at 17 (referencing AR at 820, 823).  The record thus establishes that the ALJ did not fail to explain his findings regarding the supportability and consistency of Dr. McGrody's opinion with the evidence in the record.

As for Dr. Dantoni's consultative opinion, particularly that Plaintiff could not engage in any activity involving any type of exertion because of his CHF, has chronic fatigue, and "becomes short of breath very, very easily," AR at 734, the ALJ determined Dr. Dantoni's opinion was "persuasive to the extent that her findings were consistent with the totality of the evidence."  AR at 19.  The ALJ, however, also observed that Dr. Dantoni's assessment of Plaintiff's exertional capacity was based on a single examination and was underestimated.  *Id*.  The ALJ supported this finding by referencing Dr. McGrody's treatment notes Plaintiff's repeatedly denying any shortness of breath, *id*. (citing AR at 763-65 (September 23, 2019)), as well as Dr. McGrody's repeatedly encouraging Plaintiff to engage in aerobic activity.  *Id*. ("As noted above, the claimant's cardiologist repeatedly encouraged aerobic activity.").  Relevantly, earlier in the ALJ's Decision, the ALJ cited treatment notes in which Dr. McGrody encouraged more aerobic activity.  AR at 18 (citing AR at 827 (Dr. McGrody reporting on May 17, 2016 that he "encouraged [Plaintiff] to get into a regular exercise routine to build up his strength and stamina"), AR at 847 (Dr. McGrody reporting on November 28, 2016 that "I encouraged him to get more aerobic activity and core strengthening to help overcome some of the fatigue."), and at 763 (noting on September 23, 2019 that Plaintiff "still works but does not get much exercise as he should.")).  Significantly, not only did Dr. McGrody repeatedly comment that Plaintiff could reduce his chief complaint of fatigue by engaging in more aerobic exercise, *see, e.g.*, AR at 847, but the Administrative Record is devoid of any recommendation by Dr. McGrody (or any other treatment provider), that Plaintiff avoid all exertion, or that Plaintiff continued to experience chest pain, palpitations and dizziness as reported in Dr. McGrody's opinion, AR at 911, and

Plaintiff does not argue otherwise.  Accordingly, the record also establishes that the ALJ did not fail to explain his findings regarding the supportability and consistency of Dr. Dantoni's opinion with the evidence in the record.

Furthermore, the ALJ properly considered as persuasive evidence the opinions of the State agency review physicians Dr. Saeed and Dr. Abueg "to the extent that they are consistent with the totality of the evidence."  AR at 19.  Consultative examiners and State agency medical consultants are deemed to be highly qualified physicians who are experts in Social Security disability evaluations and an ALJ is entitled to rely upon their opinions, which can also serve as substantial evidence, regardless of the absence of an in person examination.  *See Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1513a and 416.913a, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).  *See also Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) ("It is well-established that '[a] well-supported opinion from . . . a non-examining state agency doctor, . . . may . . . provide substantial evidence supporting an ALJ's decision.'" (quoting *Cassandra K. v. Comm'r* of Soc. Sec., 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d Cir. Aug. 26, 2021).  As the ALJ wrote, both Dr. Saeed and Dr. Abueg determined, based on a review of Plaintiff's medical records, that Plaintiff remained capable of performing work at the sedentary level with the additional restriction of never climbing ladders, ropes and scaffolds, and only occasionally climbing ramps and stairs.  AR at 19 (referencing AR at 68-88).  Because neither Dr. Saeed nor Dr. Abueg had the

opportunity to review the entire record, the ALJ reviewed additional evidence[10] and found Plaintiff has greater postural limitations than identified by Dr. Saeed and Dr. Abueg including that Plaintiff can only occasionally balance, stoop, kneel, crouch, and crawl, as well as an environmental limitation of no concentrated exposure to respiratory irritants based on Plaintiffs' respiratory impairment.  AR at 16-19.  Significantly, the opinions of both Dr. Saeed and Dr. Abueg are consistent with the treatment notes of Dr. McGrody which did not opine on Plaintiff's postural limitations.  There thus is substantial evidence in the record supporting the ALJ's reliance on the opinions of Drs. Saeed and Abueg.

Insofar as Plaintiff argues the ALJ failed to provide any meaningful analysis of how Plaintiff's subjective complaints and hearing testimony were not entirely consistent with other evidence in the record, Plaintiff's Memorandum at 26-29, a plain review of the ALJ's decision shows otherwise. "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms."  *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commi'r of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)).  The reviewing court will "defer to the Commissioner's resolution of conflicting evidence."  *Cage v. Commissioner of Social Security*, 692 F.3d 118, 122 (2d Cir. 2012).  "If evidence is susceptible to more than one rational interpretation, the

---

[10] The court notes Dr. Saeed's opinion was rendered on October 3, 2019, and was confirmed by Dr. Abueg on February 4, 2020, both dates falling before Dr. McGrody's November 2, 2020 opinion and the November 18, 2020 administrative hearing.

Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)).

Here, Dr. Dantoni's September 25, 2019 opinion includes that Plaintiff reported cooking two to four times a week, cleans twice a week, does laundry once a week, shops twice a week, dresses every day, showers four to five times a week, watches television, listens to the radio, and socializes with friends.  AR at 731-32.  Dr. Brownfield likewise reported the administrative record shows that Plaintiff is able to attend to his personal care needs, can cook and prepare food, clean, do laundry, shop, manage money, drive, take public transportation, socialize, watch television, and work in his roofing business.  AR at 739.  Plaintiff also reported he continued to work at his roofing job, AR at 792, and the ALJ observed that Plaintiff's earnings records showed Plaintiff engaged in SGA from 2015 through 2017, and in the third quarter of 2018.  AR at 13 (citing AR at 200-02, 203).  Significantly, in response to the ALJ's questioning at the administrative hearing, Plaintiff's representative explained that Plaintiff may not have been engaged during that time as a roofer, but only overseeing his roofing business for which Plaintiff was both owner and president.  AR at 48-50.[11]  That Plaintiff continued to work while his disability benefits application was pending was properly considered by the ALJ that Plaintiff remained capable of working, along with Plaintiff's self-reported activities of daily living and Dr. McGrody's repeated findings at follow-up examinations that Plaintiff's CHF had improved with the surgical implantation of the pacemaker.  *See Stormie H. v. Commissioner of Social Security*, 2024 WL 3579127, at * 6 (W.D.N.Y. July 30, 2024) ("In addition to her effective response to treatment, the ALJ considered

---

[11] The court notes that at the administrative hearing, Plaintiff attributed his decision to stop working to stress following the murder of his father after which "[e]verything started going downhill . . . ."  AR at 50.

Plaintiff's employment during pendency of her claims, as well as her daily activities, such as cooking, cleaning, doing laundry, driving, grocery shopping, watching television, and taking care of her bird and dogs."). *See also Rivers v. Astrue*, 280 Fed.Appx. 20, (2d Cir. 2008) (claimant's continued employment in jobs categorized as "light work" after applying for disability benefits was substantial evidence that the claimant retained the RFC for light work). Accordingly, the ALJ did not fail to analyze how Plaintiff's subjective complaints and hearing testimony were not entirely consistent with other evidence in the record.

To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's Decision that Plaintiff is not disabled under the Act. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59 ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original). Further, the Supreme Court recently reaffirmed that the threshold for substantial evidence "is not high . . . . It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citation and quotation marks omitted). Indeed, as noted, see Discussion, *supra*, at 8, the issue is not whether substantial evidence supports the claimant's argument, but "whether

substantial evidence supports *the ALJ's decision*." *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).  In the instant case, the ALJ's decision that Plaintiff could perform a limited range of sedentary work such that Plaintiff was not disabled is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 10) is GRANTED.  The Clerk of Court is directed to CLOSE the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 3, 2024
            Buffalo, New York